IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRENCE HARMER,

          Plaintiff,

              vs.                            Case No. 08-1254-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER


Plaintiff Terrence Harmer has applied for Social Security disability and supplemental income benefits. His application was denied by the Administrative Law Judge on May 18, 2007, a decision affirmed by the Appeals Council on June 27, 2008. There are two allegations of error by Harmer. First, that the ALJ failed to give proper consideration to his treating physician and other sources. Second, that the ALJ failed to determine that he met the criteria for a Listed Impairment.

Plaintiff-claimant Harmer has stated that he became disabled beginning September 2, 2003, due to mental illness, including major depressive disorder, recurrent with probable psychosis, anxiety disorder (not otherwise specified), and probable personality disorder (not otherwise specified). He has graduated from high school and prior to his alleged disability has worked as a welder, window assembler, horse-track laborer, and construction worker. The detailed facts of the case, which are

incorporated herein, are set forth independently in the ALJ's opinion (Tr. 16-21), and the briefs of

Harmer (Dkt. 15, at 4-13) and the Commissioner (Dkt. 18, at 2-11).

The ALJ concluded that Harmer did not meet any 12.00 Listing because there was "no

evidence of repeated episodes of decompensation of extended duration or marked difficulties in at

least two areas of mental functioning," and because there was an absence of medical evidence

showing Harmer's impairments were of severity equivalent to a Listed Impairment. The ALJ found

that Harmer was moderately limited in his ability to interact with other workers and to respond

appropriately to typical workplace stresses. The ALJ noted that Harmer had a history of mental

illness, but had also worked for years with those problems. (Tr. 20). Further, he had responded well

to medication, and left his job with a construction company because he had been reassigned as a

cashier and had to deal with customers. (Id.)

In reaching these conclusions, the ALJ gave substantial weight to the opinion of consultative

psychologist T.A. Moeller, Ph.D. The ALJ noted that Harmer had told Moeller that he was being

helped by the Zoloft (100 mg) and Ability (20 mg) he was receiving.

> He reported his daily activities of getting up between 7 and 10 a.m., drinking a cup
> of coffee and going to his sister's home to eat breakfast. He reported that he recently
> helped his sister repaint her home. In the evening he will spend time reading a Bible
> and during his leisure time he thinks a lot, rides his bike and goes to the library.
> Mental status exam noted that the claimant was oriented, demonstrated capacity for
> abstract reasoning but had a slight impairment of short-term memory and slight
> tangential thought process. Test scores on the WAIS-III showed his intellectual
> functioning is in the average range. He was preoccupied with his disability and had
> elevated validity scores on the MMPI-2 suggesting exaggeration. Dr. Moeller opined
> that the claimant's clinical presentation is simply not as intense or severe as the
> claimant indicates. Although he may have some difficulties with the speed in which

2

he does tasks and with focus, attention and concentration, Dr. Moeller opined that the claimant's impairments do not rise to the level of preventing simple, gainful employment.

(Tr. 20).

The ALJ gave limited weight to the medical opinion of R. Lane Parker, Ph.D. Explaining this

assessment, the ALJ wrote that Harmer

saw Dr. Parker for a few months. If this opinion is supported by the evidence, the claimant would be found disabled. However, it appears that Dr. Parker's assessment is based solely on the claimant's statements with no testing to support this assessment. Further, it is inconsistent with actual test results by Dr. Moeller. As a result, Dr. Parker's opinion is given little weight. Dr. Moeller's evaluation included clinical interview, mental status exam, objective psychological tests and review of the medical record. The undersigned finds that the conclusions of Dr. Moeller are more persuasive and are given greater weight. Dr. Parker stated that the claimant would have **marked** limitations in the ability to maintain attention and concentration for extended periods. Although the claimant may have some difficulty with attention and concentration, Dr. Moeller's mental status exam and objective test results show they do not rise to the level of disabling him. (Exhibit 7F/3) Dr. Parker stated that the claimant would have **marked** limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Although the claimant may have difficulties with the speed with which he does tasks, Dr. Moeller's mental status exam and objective test results show he should have no difficulty in doing simple tasks that do not require excessive planning, variation or judgment.

(Tr. 20) (exhibit references omitted, emphasis in original).

The ALJ also discounted the weight to be given nurse practicner Martha Kuhlmann and Dr.

Herbert R. Goodley, a medical doctor. The ALJ wrote that the residual functional capacity

assessment completed by Nurse Kuhlmann on July 25, 2006, had little weight because it was

not based on the objective medical evidence from the progress notes. The claimant first saw Martha Kuhlmann, ARNP on February 21,2006, and was worried about getting renewed for Medicaid. Ms. Kuhlmann completed his paperwork for SRS. The claimant reported that his medications helped. He reported that he was feeling better

3

than before, his moods were leveled out and his sleep was normal. Mental status exam showed the claimant was oriented times 4, congruent, pleasant but he had a depressed mood, slow speech, impaired cognition and psychomotor retardation. (By July 25, 2006, mental status exam showed the claimant's cognition was improved and the remainder of the exam was normal. Although the claimant reported that he is unable to focus for more than 30 minutes and this fluctuates from good to bad, Ms. Kuhlmann did not note any changes in the claimant's treatment/medications. Updated records from Associates in Healthcare, LLC show that the claimant reported that he is generally improving and the ARNP assessment shows orientation, mood & affect, speech, cognition, psychomotor and EPS generally within normal limits. Nurse practitioner Martha Kuhlmann's opinion is not consistent with the evidence of record for the same reasons set out above regarding Dr. Parker's opinion. It is given little weight. This same report was resubmitted with the co-signature of Herbert R. Goodley, M.D. Dr. Goodley is not considered a treating source since there is no evidence that he treated the claimant. It is given no weight.

(Tr. 21) (exhibit references omitted).

The Commissioner determines whether an applicant is disabled through a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

As noted earlier, Harmer alleges error in the failure of the ALJ to give controlling weight to the opinions of medical sources such as Dr. Parker or Nurse Kuhlmann, further claiming the ALJ did not give proper weight to either Hamer's own statements about his condition or to his GAF scores. The court finds no error. Regarding Dr. Parker's opinion, the ALJ noted the general contrast between Parker's opinion and the other evidence in the record, in particular the examination conducted by Dr. Moeller, specifically noteing an absence of testing to support Dr. Parker's conclusions. This conclusion is supported by substantial evidence. The record containing Dr. Parker's assessment (Tr. 358-64) of moderate limitations is not premised on any contemporaneous medical notes or testing.  Instead, the assessment reflects only the conclusory opinions of Dr. Parker presented in check-box form. In contrast, Dr. Moeller's opinion was based on a personal examination of Harmer and is accompanied by contemporaneous medical notes.

5

The ALJ first discounted the evidence supplied by Nurse Practioner Kuhlmann as an inappropriate medical source under the regulations, before going on to find that, in any event, Ms. Kuhlmann's opinion would be of little weight because her assessment (Tr. 281) also was conclusory, presented in a checkbox format without contemporaneous examination notes. Finally, Kuhlmann's opinions were in conflict with Dr. Moeller's well-supported opinions.

The claimant argues that the Appeals Council failed to explicitly consider the opinions submitted by Dr. Xu. However, the Appeals Council need not address every piece of evidence; its task is to determine if the ALJ's decision was contrary to the weight of evidence. *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004). Here, the Appeals Council explicitly indicated it considered Dr. Xu's assessment, but found that the assessment was contradicted by the same physician's December 2007 examination findings. (Tr. 414).

The court finds that Harmer's GAF scores do not establish that the ALJ's decision is not founded on substantial evidence. Although, as noted by Harmer, the record contains several indications of GAF scores under 50, some of these occurred prior to the time Harmer began medication, or were contained in a medical assessment (Nurse Practioner Kuhlmann's) which the ALJ found carried little evidentiary weight. Further, the record also indicates that Harmer frequently was assessed GAF scores in excess of 55. (Tr. 254, 348, 389, 394).

Finally, the court finds no error in the ALJ's decision to give limited weight to the claimant's own description of his limitations. Here, there was evidence that Harmer engaged in substantial daily activities, and that he continued to work after the date of the alleged disability. (Tr. 19-20). The ALJ also noted that Harmer had responded positively to medication, and that objective medical evidence (Dr. Moeller's report) contradicted the claimant's subjective description of his symptoms.

Harmer also argues that the ALJ erred in failing to consider the 12.00 Medical Listings. In connection with this argument, Harmer sets forth the elements of Medical Listing 12.04 and 12.06 (20 C.F.R. pt. 404, subpt. P. App. 1, §§ 12.04, 12.06 (2008)). However, he does not show support in the record for either Medical Listing. Listing 12.04 requires either (Paragraph B) restrictions of marked degree or repeated in duration, or (Paragraph C) "[m]edically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." Dr. Robert Schulman explicitly found that Harmer could not meet the requirements of Paragraph C, and claimant has made no showing that this conclusion was incorrect. Similarly, Dr. Schulman found that Harmer did not satisfy the requirements of Paragraph C of Listing 12.06. In addition, the ALJ explicitly found that Harmer did not meet the severity standards under Paragraph B. (Tr. 17). The court finds that the ALJ did not err in concluding that Harmer did not meet any Listed Impairment.

IT IS ACCORDINGLY ORDERED this 28th day of July, 2009 that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE